W. H. McKnight v. State

No. 27,259. January 12, 1955
State's Motion for Rehearing Granted March 23, 1955
Appellant's Motion for Rehearing Denied
(Without Written Opinion) May 4, 1955

*Clyde & Barnes,* by *Al Clyde,* Fort Worth, for appellant.

*Howard M. Fender,* Criminal District Attorney, *Eugene D. Biddle, Hugh F. King, Albert F. Fick, Jr.* and *Conard Florence,* Assistants Criminal District Attorney, Ft. Worth, and *Leon Douglas,* State's Attorney, Austin, for the state.

DAVIDSON, Judge.

The information in this case is in two counts, charging appellant with two separate misdemeanors, each being the practice of dentistry without a license.

The first offense was alleged to have occurred on July 10, 1953, and was that appellant "did undertake to make and did make an impression of the upper gums . . . . of W. J. Nelson, for the purpose of constructing a full upper removal dental place of false teeth for the said W. J. Nelson. . . ."

The second count charged the same offense in the same language, except that the name of A. L. Moorhead was substituted for that of W. J. Nelson and the offense was alleged to have occurred on August 7, 1953.

Each count contained the allegation that appellant was not a licensed practitioner of dentistry.

Appellant was convicted upon each count, and a fine of $100 was fixed as punishment in each count.

By Sec. 3 of Art. 754a, Vernon's P.C., one is engaged in the practice of dentistry who makes or undertakes to make an impression of the gums of a human mouth for the purpose of constructing a dental plate.

It is a violation of the law to practice dentistry without a license. Arts. 747 and 754, Vernon's P.C.

It will be noted that the unlawful act here charged is composed of two elements: (a) The impression of the gums must be made and (b) such impression must be made with the specific purpose of making a dental plate. The taking of the impression of the gums is not, of itself, unlawful. It is the purpose with which the impression of the gums is made that constitutes the unlawful act denounced by the statute and here charged in the information.

In order to convict appellant, the state was under the burden of establishing two things, which are: the two elements above pointed out. If either of these elements is lacking, the state's case fails.

This fact must be kept in mind in determining the sufficiency of the evidence to support the conviction.

Nelson resided in Austin, Texas, and was an employee of the State Board of Dental Examiners. It was in the scope of his employment to apprehend violations of the Dental Practice Act. On such an assignment, he went to Fort Worth to appellant's office and represented to him that he was an automobile salesman residing in Fort Worth and that he wanted to get an upper plate of false teeth. He represented that the upper plate he then had was loose and that he had difficulty in eating therewith. Appellant examined the plate and recommended that it be re-lined. The witness thereafter fitted a re-liner in the plate.

If we understand the witness's testimony, it is that, from this plate, appellant constructed and made for him a complete upper plate, which was delivered to witness by a lady in appellant's office.

In view of the admission of the witness upon cross-examination, a more detailed statement of his direct testimony is not called for.

Upon cross-examination, the witness testified as follows:

"A. No, he didn't make an impression of my upper gums.

("Q. What did he do?)

"A. He made an impression from this plate right here (indicating).

("Q. He made an impression from that plate?)

"A. Yes, sir.

("Q. In order to make you a plate, which is State's Ex. 1, is that correct?)

"A. Yes, sir."

If appellant did not make an impression of Nelson's upper gums, he was not guilty, as charged. Nelson says that he did not. By his own testimony, then, the evidence fails to support the conviction under the first count of the information.

We now pass to a determination of the sufficiency of the evidence to support the second count of the information charging, in identical language, the offense charged in the first count except that the name of A. L. Moorhead was substituted for that of W. J. Nelson and the date was alleged as August 7, 1953.

Moorhead resided at Stephenville, Texas, and was a part-time investigator for the State Board of Dental Examiners. In such capacity, he went to appellant's office in Fort Worth with the view of apprehending him in violating the Dental Practice Act. The witness testified: "I told him (appellant) that I wanted him to make me an upper plate, that the one I had was loose."

It is sufficient to say that appellant made the witness an upper plate from an impression made of his old plate after relining it.

Here, the witness, upon cross-examination, gave practically the same testimony as did the witness Nelson, for we find there that he testified as follows:

"Q. But he didn't make any impression of your upper gums, did he?

"A. No.

("Q. He made an impression of your upper plate, didn't he?)

"A. He *taken* my upper plate."

Unless appellant made an impression of Moorhead's upper gums, he was not guilty as charged in the second count of the information. Moorhead says that he did not do so. The facts are insufficient to support the conviction under the second count of the information.

Because the evidence does not warrant the conviction, the judgment is reversed and the cause is remanded.

ON STATE'S MOTION FOR REHEARING

MORRISON, Presiding Judge.

At the insistence of the state, we have again reviewed the record.

The complaint and information alleged that appellant "did undertake to make and did make an impression" of the upper gums of Nelson and Moorhead.

On original submission we reversed the conviction and, in holding that the evidence was insufficient, quoted certain testimony of the prosecuting witness to the effect that appellant did not make an impression of their upper gums but made an impression from their old plates for the purpose of making new ones.

The witness Moorhead, having testified that appellant "didn't make any impression" of his upper gums, further testified:

"Q. He made an impression of your upper plate, didn't he? A. He taken my upper plate.

"Q. And made an impression off of that? A. Supposedly. I don't know what he did, but anyway the only, the impression you could say he made was when he brought the wax in there and handed it to me and asked me to put it in my mouth and bite down on it and so forth."

As we now view it, there is little variance between the testimony of the state's witnesses and that of the appellant.

The appellant testified that he was a naturopathic physician and owner of the College Avenue Clinic in the city of Fort Worth, that he advertised "Dental Plate Laboratory. New false plates guaranteed to fit or money refunded," that he made impressions from old plates or impression trays, and that he made a set of upper false teeth for the two persons who are named in the information.

Appellant admitted that he placed the material in the old plate "to get the impression" but testified, "I prepared the tray and he put it in his own mouth"; that the material was soft when put on, and the heat of the mouth caused it to flow and adhere to the plate, and it firms up within three days and makes "a good working impression."

Appellant further testified that the soft material was put there "to conform to the upper gums" and that "the impression of the gum is taken on this."

Appellant's position was that he was not violating the Dental Practice Act because, as he puts it, "I prepared the tray and he (the patient) put it in his own mouth." He gave this explanation in describing his method of practice.

We quote, in part, from Article 754a, Section 3: "Any person who *shall* offer or *undertake in any manner* to prescribe or *make, or cause to be made,* an impression of any portion of the human mouth. . . ."

We conclude that appellant's position is unsound, and his testimony shows that his conduct was in violation of the act.

Appellant's able and conscientious attorney has raised a number of novel and interesting questions. We shall discuss those urged in his brief.

Bill of Exception No. 3 complains of the failure of the court to set forth in his charge the exceptions to the Dental Practice Act as set out in Article 753, V.A.P.C.

As stated, this prosecution is based upon Article 754a.

It has long been the rule in this state that if "exceptions be placed in a separate section or article from the one containing the definition of the offense, or if they be not such as to be essential to the definition of the offense, it will not be necessary to

negative such exception in the indictment charging such offense." Baker v. State, 132 Texas Cr. Rep. 527, 106 S.W. 2d 308; Blumberg v. State, 144 Texas Cr. Rep. 200, 161 S.W. 2d 1082; and Griffin v. State, 159 Texas Cr. Rep. 142, 261 S.W. 2d 838.

Bill of Exception No. 4 complains of the failure of the court to instruct the jury to acquit if the defendant believed or had reason to believe that working on inert matter only was not a violation of the Dental Practice Act. This, of course, would be tantamount to telling the jury that if the appellant were mistaken as to the law, he would not be guilty. Article 40, V.A.P.C., provides, "No mistake of law excuses one committing an offense," and disposes of this contention.

Bill of Exception No. 5 complains of the failure of the court to charge the jury that the Dental Practice Act did not apply to physicians and surgeons legally authorized to practice medicine as defined by the laws of this state.

As stated earlier, Article 753 sets forth the exceptions to the Dental Practice Act, among them being "physicians and surgeons legally authorized to practice medicine as defined by the law of this State."

Appellant contends that he comes within this exception because he is a licensed naturopathic physician.

We call attention to paragraph two of Section 18 of Article 4590d (Practice of Naturopathy), which reads, in part, as follows:

"Nothing in this Act shall be construed to be authority for any naturopath, licensed hereunder, to practice medicine as defined by the laws regulating the practice of medicine in this State, Surgery, Dentistry. . . ."

The state's motion for rehearing is granted, the judgment of reversal is set aside, and the judgment is now affirmed.

DAVIDSON, Judge, dissenting.

As pointed out in our original opinion, the only offense which was charged against the appellant and for which he was convicted is that he made an impression of the upper gum of each of the state's witnesses for the purpose of constructing an up-

per plate. The making of the impression of the gums was the essential element of the offense charged.

The state assumed the burden of proving those allegations, and if it did not so do then this conviction cannot stand.

Again, as pointed out in the original opinion, the testimony of the two state's witnesses upon that point was set out, by which it is shown that the two witnesses positively and definitely and unequivocally testified that appellant did not make an impression of the upper gums. Those witnesses surely knew the truth of what they were testifying. No one could have known better than they whether appellant took an impression of their gums.

All the facts, and those to which my brethren refer, show that whatever impression was made by appellant was made of the existing plates of the witnesses, from which they desired new plates to be made.

The making or construction of plates, however, is not unlawful under the dental practice act, nor is it the practice of dentistry, for Art. 753, Vernon's P.C., expressly provides that the dental practice act does not apply to "persons doing laboratory work on inert matter only, and who do not solicit or obtain by any means, work from a person or persons not a licensed dentist actually engaged in the practice of dentistry; and, who do not act as the agents or solicitors or have any interest whatsoever, in, any dental office, practice, or the receipts therefrom."

So a person may take inert matter and, with that, construct a dental plate without practicing dentistry. The process which that person uses or employs in constructing a plate, whether by the use of other dental plates or not, is a matter over which the dental practice act has no control, because such is not the practice of dentistry.

When it came on to draw the information in this case, the state, of necessity, knew that a violation of the dental practice act under the provision here employed could occur only upon facts showing that an impression of the gums was made or undertaken to be made for the purpose of making a dental plate and, for that reason, based its case upon the allegation that appellant undertook to make and did make an impression of the upper gums of the state's witnesses for the purpose of making a plate.

480

The practice of dentistry is regulated and authorized to be regulated by law because it is a matter that relates to the public health; of necessity, the regulations appertaining thereto must relate to that subject.

The person working only on or with inert matter can hardly be said to be engaging in a business that relates to the public health or engaged in the practice of dentistry.

The facts are insufficient to show that the appellant, by constructing the plates for the state's witnesses without taking an impression of their gums, was engaged in the practice of dentistry.

I dissent, therefore, from the affirmance of this conviction.